UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
COASTAL SHEET METAL CORP,                    07 cv 6898 (LAP)
                        Plaintiff,

        -against-

WACHOVIA BANK, N.A.,

                        Defendant.
------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

SULLIVAN GARDNER, P.C.
475 Park Avenue South.
New York, New York 10016
(212) 687-5900
Attorneys for Plaintiff

**Statement of Facts**

Coastal Sheet Metal Corp ("Coastal") is a New York Corporation with its principal place of business located on 1125 Close Avenue, Bronx, New York, and performs all of its work in New York State. Coastal has been engaged in the business of designing, manufacturing and installing H-VAC systems for thirty years. From approximately 1985 through 2003, the day to day operations of the company were overseen by Mr. Harry Vassallo, the president of Coastal. Though Mr. Vassallo was the president of Coastal during this time he had no ownership or profit sharing agreement with the company whatsoever. From 1985 through 2003, the sole shareholder of Coastal was Mr. Laurence Kupferschmid. Mr. Kupferschmid was actively engaged in other business ventures during this time and in many ways could be considered an absentee owner of Coastal. Though he would conduct regular meetings with Mr. Vassallo regarding the status of the company, Mr. Vassallo was in charge of the company's daily operations.

After numerous arguments between Mr. Vassallo and Mr. Kupferschmid regarding the lack of success the company was experiencing, as well as Mr. Vassallo's complaints regarding his inability to obtain an ownership interest in Coastal, Mr. Vassallo was terminated from Coastal in January of 2003. Following his decision to terminate Mr. Vassallo, Mr. Kupferschmid assumed the responsibilities of the day to day operations of Coastal, a role he has continued to this day.

Upon his return to the company on a daily basis, Mr. Kupferschmid began reviewing all of Coastal's projects which still maintained open account balances. What Mr. Kupferschmid discovered was that many of Coastal's projects maintained large balances due to the company, with little effort shown by Mr. Vassallo to collect those monies due. As a

result, Mr. Kupferschmid began contacting several contractors for whom work had been performed by Coastal in an attempt to collect on outstanding balances. When these efforts failed, Coastal initiated several lawsuits to collect the monies owed.

In one particular action, as part of the discovery process, the contractor involved in that lawsuit produced what it claimed were copies of cancelled checks which evidenced payments to Coastal on the project at issue.[1] A review of these checks by Mr. Kupferschmid revealed that some of the checks had been deposited in a First Union bank account. However, Coastal never maintained a First Union bank account. This revelation caused a subpoena to be served upon Wachovia Bank N.A. ("Wachovia"), which purchased First Union in 2001, seeking copies of all records in Wachovia's possession related to this account. The information received from Wachovia revealed that the account at issue was opened in 2001 under the name "Coastal Sun Metals" and that the address listed on the account for Coastal Sun Metals was Mr. Vassallo's home address. In addition, Wachovia presented copies of all checks deposited into this Coastal Sun Metals account, as well as all checks drafted against the balance on that account, which were still in its possession. The checks deposited into the account were made payable to Coastal Sheet Metal, or in a few limited cases "CSM", not Coastal Sun Metals. Each of these checks had as an endorsement on the back of the check "C.S.M." and the account number for the First Union account, 2000008759474. In addition to the checks deposited into the account, Wachovia presented copies of all checks drafted against the account. All of those checks, including two checks made payable to the principal of the contractor who Coastal is presently in litigation with, were signed by Mr. Vassallo.

---

[1] Produced on or about August 1, 2006.

Coastal maintains that this First Union account was unquestionably set up solely for the purpose of stealing checks submitted by Coastal's vendors. Moreover, regardless of the intent of Mr. Vassallo, the fact remains that Wachovia accepted checks made payable to "Coastal Sheet Metal" and deposited the funds in the Coastal Sun Metal account, despite the fact that the names on the checks differed from the name on the account, and the only endorsement on the back of each check was "C.S.M.", a poor forgery for a "Coastal Sheet Metal" endorsement. Regardless, no explanation can exist for Wachovia's acceptance of a check made out to Coastal Sheet Metal, endorsed by C.S.M. and depositing funds from the drafters' account into a Coastal Sun Metals account at Wachovia. The endorsement was a forgery and should not have been accepted by Wachovia. [2]

All of the funds placed into Wacohvia's Coastal Sun Metals account in this manner from checks drafted to Coastal Sheet Metal where from funds held by the drafter of the check in New York bank accounts, and those funds were collected by Wachovia from these New York accounts. The payments, if correctly processed, would have been a New York drafter, release funds from a New York bank, to the New York bank account of a New York corporation for work performed in New York.

### Argument

**Point I.  New York Law Applies To Plaintiff's
Claims For Breach of Contract**

Defendant alleges that based upon the case law cited in its brief, "When a person fraudulently endorses checks belonging to a resident of one state and deposits them in a bank located in a different state, the law of the state where the deposits are made applies to claims

---

[2] It should also be noted that Defendant does not deny the allegations by Coastal that the checks at issue were improperly accepted by its New Jersey branch. Rather, Defendant's argument, in an attempt to avoid liability

arising out of the deposits." See Defendant's Memorandum of law at pg. 5. However, the case law cited by Defendant in support of that assertion deal only with tort claims of conversion, not breach of contract claims arising out of a forged endorsement. As will be discussed more fully below, New York courts apply different tests to resolve choice of law issues in tort cases, such as conversion, as opposed to breach of contract claims. *See, Matter of Allstate Insurance Co.*, 81 N.Y.2d 219, 225, 613 N.E.2d, 597 N.Y.S.2d 904 (1993). In tort action, the places where the tort occurs typical has the strongest public interest in having its law applied to the case, however, the same cannot be said for breach of contract actions which typically look to the totality of the circumstances which give rise to the contract and its breach when deciding which state's law should apply. Id.

A federal district court deciding a diversity case applies the same choice of law rules as the state courts in the state which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 85 L.Ed. 1477, 61 S. Ct. 1020 (1941). Since this litigation is a diversity action which commenced in the Southern District of New York, New York rules as to choice of law accordingly govern. *Lunds, Inc. v. Chemical Bank*, 870 F.2d 840, 845 (2d Cir. 1989).

New York, in deciding choices of law issues, utilizes a "grouping of the contacts" analysis which sets forth five elements to be weighed in deciding which state's law should apply to a breach of contract claim.[3] Those five elements are as follows: the place of contracting, negotiation, performance, the location of the subject matter of the contract, and the domicile of the contracting parties. See Restatement [Second] of Choices of Laws § 188[2]; *see also Matter of Allstate Insurance Co.*, 81 N.Y.2d 219, 613 N.E.2d, 597 N.Y.S.2d 904 (1993).

---

for the improperly drawn funds, in the instant application anyway, is limited to issues regarding statute of limitations.

New York recognizes an implied breach of contract cause of action against a bank, upon a forged endorsement, it collects money from the drawee bank and holds the proceeds in the same way it would for the payee (although actually held in an account for the forger). *See Hechter v. New York Life Insurance Company*, 46 N.Y.2d 34, 385 N.E.2d 551, 412 N.Y.S.2d 812 (1978). New York has found that such a relationship between the payee on a forged instrument and the bank which draws funds on that forged instrument is sufficient to create privity between them, i.e. the payee and the bank drawing the funds. *See Id* at 38. Therefore, the conduct which creates the contract alleged in this matter was Defendant's collection of the funds from the drawee banks at issue. Further, all of the checks deposited into the Coastal Sun Metals account within six (6) years of the filing of Plaintiff's action, with a single exception of a June 28, 2001 check drafted by RJR Mechanical, were drawn against accounts maintained at New York banks.[4] See Exhibits D, E, and F to Affidavit of Timothy O. Merck in support of Defendant's motion to dismiss the complaint. Therefore, the act of pulling funds based upon the forged instruments was done in New York, not New Jersey.

Again, it should be noted that all of the case law cited by the Defendant in its Memorandum of Law in support of its application with reference to the choice of law issue herein relates solely to tort based causes of action for conversation, and not the breach of contract causes of action asserted by Coastal. *See Lunds's Inc. v. Chemical Bank*, 870 F.2d 840, 845 (2d Cir. 1989); *see also Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 668-669 (S.D.N.Y. 1996). In fact, Defendant has offered no authority that any choice between New

---

[3] Plaintiff agrees to voluntarily waive and discontinue its tort claims for conversion in this matter.
[4] As will be discussed more fully below, New York applies a six (6) year statute of limitation to claims for breach of an implied contract.

York and New Jersey law on the issue of Coastal's breach of contract claim requires application of New Jersey law to this action.

When applying these facts to the five (5) elements discussed above it is clear that the elements fall in favor of applying New York law to Plaintiff's claims. First, the element of the place of contracting, is the place where the implied contract came into existence. Here, that was at the time that Defendant collected money from the drawee banks. Again, a review of all of the checks deposited into the Coastal account within six (6) years of the filing of this action reveals that such funds were pulled from New York banks, therefore, the place of contracting in this instance is New York.

The second factor applicable to this matter is the location of the subject matter of the contract. Again, as stated above, the checks and money at issue where both taken from New York. The checks themselves were stolen from a New York corporation at its place of business located in the County of Bronx. The funds were pulled from the drawee banks at accounts maintained by New York branches. Again, as with the first factor, this factor falls in favor of applying New York law.

As two of the remaining factors are inapplicable to these facts, specifically the elements of negotiation and performance, the final element to be considered is the domicile of the parties. A corporation is domiciled only in the state where it is incorporated. *Sease v Central Greyhound Lines, Inc., of New York*, 306 NY 284, 117 N.E.2d 899 (1954). Coastal is a New York corporation; therefore its domicile is New York. Wachovia is a National Banking Association chartered under the National Bank Act, 12 U.S.C. § 21 *et seq*. Further, Wachovia, nor First Union, are, nor were ever, domiciled in New Jersey. Further, Wachovia is, and First Union was, authorized to do business in the State of New York. The only party

with a domicile in New York or New Jersey is Coastal Sheet Metal with a domicile in New York, while all parties are authorized to do business in New York. Therefore, this element, just as the prior elements, favors the application of New York law over that of the State of New Jersey.

Accordingly, all of the elements under New York choice of law case law supports the application of New York's law to the facts of this instant matter.

**Point II. Under New York Law of Implied Contract Plaintiff has Six Year Statute of Limitations**

As discussed above, New York recognizes an implied breach of contract cause of action when a bank, upon a forged endorsement, collects money from the drawee bank and holds the proceeds in the same way it would for the payee. *See Hechter v. New York Life Insurance Company*, 46 N.Y.2d 34, 385 N.E.2d 551, 412 N.Y.S.2d 812 (1978). New York case law finds that in such cases privity exists based upon the collecting banks drawing of funds intended for the payee. *See Id.* at 553. Even following New York's enactment of UCC Section 3-419, which created a statutory conversion cause of action for the conduct alleged herein, the New York Court of Appeals refused to find that the enactment of that section abolished the pre-code contract cause of action. Id at 554. Continuing, the court found that the plaintiff's right to elect a contract cause of action in cases such as the instant matter was left undisturbed and the plaintiff's in such cases remained free to shroud their claim in the longer six-year statute of limitation. Id. at 554.

Therefore, herein, Coastal may maintain a breach of contract cause of action for every forged instrument deposited into the Coastal Sun Metal account on or after June 1, 2001, six years prior to the June 1, 2007 filing of Coastal's summons and complaint in this matter.

**Point III. Plaintiff withdraws its tort claims for conversion**

As discussed above, Coastal is voluntarily waving and withdrawing its tort claims for conversion in this matter.

## Conclusion

As discussed above, the analysis of the facts of this case under the State of New York's choice of law issues requires application of New York law on the issue of breach of an implied contract to the facts of this case. Based upon this fact, Coastal is afforded a six year statute of limitation on all claims asserted by Coastal against Defendant in this matter. Accordingly, Defendant's instant application must be denied.

Dated: New York, New York
 October 18, 2007

SULLIVAN GARDNER P.C.

By: _____
Steven R. Montgomery (SM4514)
Attorneys for Plaintiff
475 Park Avenue So., 33rd Floor.
New York, New York 10016
(212) 687-5900

TO:

Hunton & Williams LLP
Attorneys for Defendant
Wachovia Bank, N.A.
200 Park Avenue
New York, New York 10166